COPY

1  Scott P. Shaw, Bar No. 223592
2  sshaw@calljensen.com
   Deborah A. Gubernick, Bar No. 242483
3  dgubernick@calljensen.com
   CALL & JENSEN
4  A Professional Corporation
   610 Newport Center Drive, Suite 700
5  Newport Beach, CA 92660
   Tel:   (949) 717-3000
6  Fax:   (949) 717-3100
7

8  Attorneys for Active Sports Lifestyle USA, LLC dba Active Ride Shop

9

FILED
2012 APR 13 PM 3:09
CLERK U.S. DISTRICT COURT
CENTRAL DISTRICT CALIF.
SANTA ANA
BY

10          **UNITED STATES DISTRICT COURT**

11          **CENTRAL DISTRICT OF CALIFORNIA**

12

| | |
|---|---|
| 13  ACTIVE SPORTS LIFESTYLE USA, LLC dba ACTIVE RIDE SHOP, | Case No. **SACV12 - 0572 RNB** |
| 14 | |
| 15          Plaintiff, | **COMPLAINT FOR** |
| 16          vs. | 1. **FEDERAL TRADEMARK INFRINGEMENT (15 U.S.C. § 1114(1))** |
| 17  OLD NAVY LLC, and OLD NAVY (APPAREL) LLC and DOES 1-10, | 2. **FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))** |
| 18 | 3. **REVERSE CONFUSION TRADEMARK INFRINGEMENT (15 U.S.C. § 1114 et. seq.)** |
| 19          Defendants. | 4. **CALIFORNIA COMMON LAW TRADEMARK INFRINGEMENT (Cal. Bus. & Prof. Code § 14200 et seq.)** |
| 20 | |
| 21 | |
| 22 | 5. **UNFAIR COMPETITION AND UNFAIR BUSINESS PRACTICES (Cal. Bus. & Prof. Code § 17200 et seq.)** |
| 23 | |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |
| 26 | |
| 27 | Complaint Filed:   None Set |
| 28 | Trial Date:            None Set |

CALL & JENSEN
A PROFESSIONAL CORPORATION

ACT01-11:963911_1:4-13-12

- 1 -

COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff ACTIVE SPORTS LIFESTYLE USA, LLC dba ACTIVE RIDE SHOP ("Plaintiff" or "Active") hereby alleges as follows:

## PRELIMINARY STATEMENT

1.     By this Complaint, Active seeks injunctive relief, damages, and other remedies provided for by law to remedy injuries caused by Defendants OLD NAVY LLC and OLD NAVY (APPAREL) LLC's (collectively, "Defendants" or "Old Navy") conduct of infringing Plaintiff's distinctive trademarks, and for Defendants' unfair competition in violation of California and United States laws.

2.     Active is a retail clothing company that operates multiple retail stores, an online store, and produces and sells apparel, accessories, skateboards and related products.  Active is the owner of a family of ACTIVE trademarks (the "ACTIVE Trademarks") described more fully below.  By way of this Complaint, Active seeks compensatory and punitive damages, restitution and permanent injunctive relief as described below and in Active's Prayer for Relief.

3.     Old Navy is a retail clothing company that operates multiple retail stores, an online store, and produces and sells apparel, accessories and related products.  Old Navy recently began marketing and selling ACTIVE brand clothing products, which is at the core of this dispute.

## PARTIES

4.     Plaintiff Active is and was at all times mentioned in this Complaint a limited liability company organized and existing under the laws of Florida, with its headquarters located at 12087 Landon Drive, Mira Loma, California 91752.

5.     Defendant Old Navy LLC is, and was at all times mentioned in this complaint, a limited liability company organized and existing under the laws of Delaware, with its headquarters located at 2 Folsom, San Francisco, California 94105.

6.     Defendant Old Navy (Apparel) LLC is, and was at all times mentioned in this complaint, a limited liability company organized and existing under the laws of

COMPLAINT AND DEMAND FOR JURY TRIAL

CALL & JENSEN
A PROFESSIONAL CORPORATION

Delaware, with its headquarters located at 2 Folsom, San Francisco, California 94105. Old Navy (Apparel) LLC is, on information and belief, a division of Old Navy LLC.

7.    Plaintiff is ignorant of the true names and capacities of defendants sued as DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes, and on the basis of that information and belief alleges, that at all times mentioned in this Complaint, DOES 1-10 were the agents and employees of their co-defendants or otherwise responsible for the conduct complained of herein, and in doing the things alleged in this Complaint were acting within the course and scope of that agency and employment or were otherwise responsible for the damages complained of by Plaintiff.  Plaintiff will amend this Complaint to allege its true names and capacities when ascertained.

## JURISDICTION AND VENUE

8.    This is an action for federal trademark infringement pursuant to 15 U.S.C. § 1114, false designation of origin under the Lanham Act pursuant to 15 U.S.C. § 1125, reverse confusion trademark infringement under 15 U.S.C. § 1114, California common law trademark infringement under California Business & Professions Code § 14200 *et. seq.*, and unfair competition and unfair business practices under California Business & Professions Code § 17200 *et seq.*

9.    The Court has jurisdiction under 15 U.S.C. §§ 1121, 1125; 28 U.S.C. §§ 1331 and 1138(a) in that this case arises under the Trademark Laws of the United States, 15 U.S.C. §§ 1051 *et seq.*  The Court has jurisdiction over the unfair competition claims herein pursuant to 28 U.S.C. § 1338(b) because these claims are joined with a substantial and related claim arising under the Trademark Laws of the United States.

10.    Venue is proper in this district under 28 U.S.C. § 1391(b) in that Defendants are subject to personal jurisdiction in this district, and a substantial part of the events giving rise to the claim occurred in this district, and Defendants have targeted their harm and injury to Plaintiff whose multiple retail stores exist in this district.

11.     Defendants are subject to personal jurisdiction in this district under Federal Rules of Civil Procedure Rule 4(k)(1)(A) and California Code of Civil Procedure § 410.10.   Defendants have purposely availed themselves of the privilege of doing business in this judicial district by, among other things, (1) operating multiple Old Navy retail stores in this district, (2) marketing and selling the products to California residents in this district via mail, email and other means; and (3) entering into sales contracts with California residents through online retail sales in this district.

## FACTUAL BACKGROUND

12.     In 1985, John Wallace opened a small, family-owned retail clothing store called Active Sweats.   This store was based in Chino, California and sold primarily casual sweat pants, sweatshirts and related items.

13.     In 1989, the store's name was changed to Active RideShop.  At the urging of John Wallace's son, Active's product offerings were quickly expanded to include skate, surf and snow clothing and related hard goods to meet the growing demand for these products in the Inland Empire.

14.     Indeed, Active capitalized on the opportunity to be one of the first retailers to bring surf and skate apparel from the coast to the Inland Empire—the passage way to the mountains for coastal and non-costal residents of California.

15.     In 1992, Active opened its Active store in Rancho Cucamonga, California as the ACTIVE brand and the stores' popularity continued to flourish.  In the few short years that followed, Active quickly added stores in San Dimas (1995), Temecula (1998), Escondido (1999) and Irvine (2000).

16.     During these years, the sport of snowboarding grew in popularity.   As interest in the sport took off in the early 1990's, Active was one of the first to support the trend, the sport and its riders.   Active did so while expanding the ACTIVE brand and consumer base.   Active's marriage of fashion and action-sports trends, coupled with its dedication to the action-sports industry and its consumers, resulted in Active becoming a recognized leader in the action-sports-retail industry.

CALL & JENSEN
A PROFESSIONAL CORPORATION

17.     In fact, Active understood the key to expanding its brand while supporting its very first consumers: skaters and snowboarders.  In approximately 1993, Active launched its first sponsored "team program", which consisted of up and coming skateboard riders such as Richard Mulder and Tara Dakides.  By the late 1990's, the sponsored team program had grown to include some of the top skateboard riders such as Daewon Song, Kenny Anderson, Eric Koston, Danny Way, Joni Malami, Paavo Tikkenen and Blaise Rosenthal.

18.     By 1999, Active's Mail Order store was in full swing through its website, <www.activemailorder.com>.  While expanding its on-line presence and mail order services, Active also launched its sponsorship and promotion of the top 12 Elite Pro Skateboarders in the country, including Andrew Reynolds, Arto Saari, Erik Ellington and Adrian Lopez, to name a few.  These well-known riders grew in popularity and gained significant exposure, as did Active and the ACTIVE branded goods and services.

19.     Active's team program has since continued.  Active sponsors skateboarders and snowboarders today, and has sponsored over two hundred (200) riders  in the program—including sponsored riders who work in Active's stores as well as professional riders.  These sponsored athletes wear frequently wear and promote ACTIVE branded products, resulting in enhanced and widespread visibility of the ACTIVE brand and related ACTIVE Trademarks.

20.     Since the 1990's Active grew its brand while partnering with other retailers, lining its shelves with not only its own ACTIVE goods, but also products from retailers such as MCD, Quicksilver, Vans, Simple and Airwalk.  With the ever-expanding product offerings, Active continued to expand its retail store presence, opening stores in Brea (2000), Burbank (2005) and an additional ten stores between 2007-2008.

21.     Active's sponsorship of extreme athletes/riders has resulted in high-profile visibility for Active and the ACTIVE Trademarks.

22.    Active has also enjoyed the popularization and related success of its goods and services through extensive press coverage and advertising, including articles in *Transworld Skateboarding*, *Snowboarder*, *Skateboard*, *944 Magazine*, *Foam*, *Bl!sss Magazine* and *Thrasher Magazine*, to name a few. Active has been featured in press articles in *Transworld Biz* over twenty times, and in the *LA Times*, *Orange County Register*, *Shop-Eat-Surf*, as well as being featured in a CNBC special.

23.    Active has worked hard to achieve its success, investing considerable effort and expense in developing its brand recognition. Since approximately 1992, Active has attended several trade shows in the apparel industry, such as ASR and Magic, and has been a sponsor of various high-profile, popular events including Active Bling Fest, Active Brodown Shodown, Active Sponsor Me Contest, X Games Shop Contest, Active Hotdawgs and Hessians Tour, The Give Event, and the Active Maloof Cup. Active's presence at these trade shows and events has further solidified the goodwill and notoriety of the ACTIVE goods and services among the consuming public.

24.    Active's on-line presence since 1999 is equally impressive. Active is the recipient of over 2 million hits to its website <www.activerideshop.com> each year, has had nearly six million viewings of its YouTube channel <www.youtube.com/activemailorder2000>, and has several tens of thousands of followers in social media sites such as Facebook, Twitter and Tumblr (<facebook.com/activerideshopfans>, <twitter.com/activerideshop> and <activerideshop.tumblr.com>).

25.    By 2007, Active was recognized as the men's break-through brand of the year. Attached as Exhibit A is an article regarding Active's receipt of this award.

26.    Today, Active has twenty-one (21) stores in locations throughout Southern California. Active sells to customers nationwide and is enjoying recent international business as well.

27.    In short, since 1989, Active has invested considerable time, effort and expense in the creation, advertising and promotion of its ACTIVE brand of goods and services.

## ACTIVE'S TRADEMARKS, PRODUCTS AND SERVICES

28.    Active is the owner of multiple pending and registered domestic trademarks, at least two international trademark registrations, and multiple common law trademarks for its goods and services in Classes 25 (for, generally speaking, clothing items) and 35 (for, generally speaking, retail store services).  These trademarks are collectively referred to herein as the ACTIVE Trademarks.

29.    The ACTIVE Trademarks have acquired distinctiveness.  Consumers recognize the ACTIVE brand and its family of trademarks originating exclusively from Active.  Samples of use of ACTIVE Trademarks attached as Exhibit B.

30.    As early as 1992, Active began incorporating use of the ACTIVE word mark on or in connection with its products and services, in various fonts.  Through consistent, widespread use of ACTIVE on clothing and related items, Active has developed enforceable common law trademark rights that date back to that date, and perhaps even earlier.

31.    The ACTIVE word mark registration, U.S. Registration No. 3024942, has achieved incontestable status through filing the appropriate declarations with the United States Patent and Trademark Office.  A true and correct copy of this registration is attached as Exhibit C, with the accompanying statement of incontestability.

32.    By 1998, Active began extensively using its well-known "Triangle Design" mark, shown below, and secured a trademark registration for this mark, U.S. Trademark Registration No. 3549713.  The trademark registration for this mark is attached as Exhibit D.



33.   Active commonly uses its Triangle Design on its clothing and accessories and store fronts in red, as shown below.

34.   Since 1989, Active has continued to develop its Active brand through continuous use of its Active Trademarks, and obtained U.S. Trademark Registration Numbers 3024942, 3093505, 3953785 and 3142475 for the marks shown below (and also attached hereto as Exhibits C, E, F and G, respectively).

ACTIVE®



35.   Since 1998 to present, Active has continued to develop its family of ACTIVE Trademarks, including the five common-law ACTIVE Trademarks shown below:

CALL & JENSEN
A PROFESSIONAL CORPORATION

36.     Indeed, Active has spent hundreds of thousands of dollars developing its ACTIVE Trademarks and the goodwill associated therewith.  Consumers have come to recognize the ACTIVE Trademarks as originating from Active.  The Active Trademarks are valid, strong and enforceable.  Active has developed a reputation of quality and goodwill in the minds of the consuming public for its Active Trademarks.

37.     The longstanding, continuous and extensive use of the ACTIVE Trademarks, coupled with Active's international and domestic trademark applications and registrations place others on notice of Active's trademark rights.

38.     The ACTIVE Trademarks pre-date the use and applications to register similar marks by Defendants.  Thus, Active has prior and superior rights.

## OLD NAVY'S INFRINGING TRADEMARKS AND ACTIVITIES

39.     On information and belief, and years after Active established its trademark rights, Old Navy saw an opportunity to capitalize on the success of the mark ACTIVE.  Old Navy devised and initiated a new marketing campaign featuring the trademark, ACTIVE.

40.     On March 31, 2011, Old Navy filed two U.S. trademark applications for stylized trademarks with the dominant portion of the mark being "ACTIVE".  These

two trademarks were assigned Serial Numbers 85/283208 (Class 25) and 85/283207 (Class 35) (collectively, the "Old Navy ACTIVE Trademarks"). The image(s) associated with both of these marks is below. True and correct copies of these applications are attached hereto as Exhibits H and I.



41.    Notably, Old Navy's ACTIVE Trademarks include a stylized triangle component – as does Active's stylized trademarks. Old Navy Trademarks cover clothing items and retail and online store services—the same goods and services for which Active uses its marks.

42.    On March 31, 2011, Old Navy also filed five U.S. trademark applications for a Trident/Triangle Design alone – again similar to the Triangle Design Active has used for more than a decade. These trademarks were assigned Serial Numbers 85/283206, 85/283205, 85/283204, 85/283203, and 85/283201. True and correct copies of these applications are attached hereto as Exhibits J-N.

43.    Two of the five of Old Navy's Trident/Triangle Design applications are for clothing items and retail and online store services—the same categories of goods and services for which Active uses its trademarks (Serial Numbers 85/283204 and 85/283201). The image associated with these marks is below (also shown in Exhibits L and N):



44.    July 2, 2011, the United States Patent and Trademark Office ("USPTO") issued "Office Actions" refusing to register the Old Navy ACTIVE Trademarks under Section 2(d) of the Lanham Act, citing a likelihood of confusion with Active's

CALL & JENSEN
A PROFESSIONAL CORPORATION

registered trademarks. Attached as Exhibits O and P are true and correct copies of the Office Actions.

45. Despite receiving the Office Actions, Old Navy continued to market the Old Navy ACTIVE Trademarks in its stores, on clothing, in mailers, in website promotions, and in commercials. In fact, its marketing efforts spiked—all while being aware of Active's trademarks and the likelihood of confusion. Attached as Exhibit Q is a true and correct copy of samples of Old Navy's infringing use and advertising.

46. On December 20, 2011, Active, through its attorneys, sent a cease and desist letter to Old Navy alleging that Old Navy's use and application of marks containing ACTIVE are likely to cause confusion and/or reverse confusion, and requesting that Old Navy: 1) cease all use of ACTIVE in connection with clothing items and retail/on-line retail store services; 2) cease further use in websites, advertisements, third party websites and in related media; 3) provide an accounting; and 4) expressly abandon its Old Navy ACTIVE Trademarks filed under Serial Numbers 85/283208 and 85/283207. Attached as Exhibit R is a true and correct copy of this letter.

47. Rather than immediately respond to Active's cease and desist letter, on December 23, 2011, Old Navy filed a substitution of attorney with the USPTO – removing its in-house counsel as attorney of record, and appointing outside counsel to handle the refusal of its Old Navy ACTIVE Trademarks that were pending before the USPTO. The new firm appointed to handle the response is Fross Zelnick Lehrman & Zissu ("Fross Zelnick"). Attached as Exhibit S are true and correct copies of the substitution of attorney documents filed with the USPTO.

48. On December 30, 2011, in attempt to quickly register its marks and overcome the Section 2(d) refusals issued by the USPTO before responding to Active's cease and desist letter, Old Navy, through its new counsel, Fross Zelnick, filed a response to the USPTO's Office Actions, arguing that Active's mark is weak, among other things.

49.    In another attempt to buy time to try to register its marks before responding to Active, on January 3, 2012, Old Navy (using its affiliate, Gap, Inc.'s in-house counsel), responded to Active's cease and desist letter—simply stating it would provide a substantive response ten days later – by January 13, 2012.  Attached as Exhibit T is a true and correct copy of this letter.

50.    On January 13, 2012, Fross Zelnick finally responded to Active's cease and desist letter, and ultimately refused to comply with any of Active's demands.  Old Navy argued in its letter that Active's mark is weak, and that Active and Old Navy target different consumers.  Attached as Exhibit U is a true and correct copy of this letter.

51.    Notably, Old Navy's advertising and in-store displays suggest that Active and Old Navy's consumers and goods are in fact the same.  See Exhibit Q showing examples of Old Navy's advertising and in-store displays, some of which depict skateboards, among other things.

52.    On January 20, 2012, Active, through its attorneys, responded to Fross Zelnick's letter, and reiterated its position that Old Navy's use and registration of the Old Navy ACTIVE Trademarks, for the same goods and services, is likely to cause confusion.  Active also informed Old Navy that the timing of Old Navy's Office Action response was suspect.  Attached as Exhibit V is a true and correct copy of this letter.

53.    On January 27, 2012, the USPTO issued a Final Office Action, rejecting Old Navy's arguments regarding the Class 35 Old Navy ACTIVE Trademark (for retail store services).  Old Navy may respond or appeal the refusal by July 27, 2012.

54.    On February 29, 2012, Fross Zelnick responded to Active's January 20, 2012 renewed cease and desist letter, stating among other things that Active's marks are descriptive and have not acquired distinctiveness in the marketplace.  The letter went on to incorrectly suggest, by taking matters out of context, that Active had essentially signed away its right to enforce its mark by entering into a consent agreement with

CALL & JENSEN
A PROFESSIONAL CORPORATION

another trademark holder who had been coexisting with Active for more than a decade (Active Body of Scottsdale).

55.    Meanwhile, the Class 25 Old Navy ACTIVE Trademark (for clothing items) was published for opposition purposes on March 21, 2012 (meaning any third party [like Active] had thirty days from the date of publication to oppose or request an extension of time to oppose the trademark).  Active opposed the Class 25 Application, as explained in more detail below.

56.    Simply put, Old Navy, as a corporate retail powerhouse, willfully continues to infringe the ACTIVE Trademarks, with no intention of ceasing the infringing activity.  Old Navy seeks to capitalize on the hard-earned goodwill of a comparatively small player who spent years developing its brand recognition, with no regard for Active's efforts or trademark rights.

57.    Based on Old Navy's actions and statements leading up to this dispute, Active can only believe that Old Navy's actions are intentional.  It has sought to delay its responses to Active while trying to quickly convince the USPTO to register its marks, all while having actual and constructive knowledge of the ACTIVE Trademarks.

58.    There can be no dispute that Old Navy had notice of Active's marks, not only from Active's long standing use and cease and desist letter, but also from the USPTO citing Active's marks as an initial bar to the registration of the Old Navy ACTIVE Trademarks.  Nevertheless, Old Navy continues to extensively advertise, produce and sell clothing under the ACTIVE brand, collecting what may be millions in revenue to the detriment of Active.

59.    Evidence of Old Navy's use of ACTIVE on clothing items is also attached hereto as Exhibit Q.  These examples clearly show Old Navy's attempt to capitalize on ACTIVE as a trademark on the same items for which Active uses its trademarks.

60.    On information and belief, Old Navy targets the same consumers and marketing channel to which Active sells its goods and services.  As just one example, Exhibit  W  demonstrates  that  Old  Navy  is  marketing  to  skateboarders—and

1   demonstrates an overlap in the hard-goods goods offered and advertised by Active and
2   Old Navy.

3       61.   Old Navy refuses to 1) cease branding its products with, and using marks
4   confusingly similar to the ACTIVE Trademarks; 2) withdraw its pending Old Navy
5   Active Trademark applications, and 3) agree with Active's reasonable demands.
6   Accordingly, Old Navy has left Active with no other option but to seek judicial
7   intervention.

8       62.   Likewise, Active had no other option but seek administrative relief to
9   prevent the registration of Old Navy's marks.   On April 3, 2012, Active filed
10   oppositions before the USPTO's Trademark Trial and Appeal Board ("TTAB") ,
11   opposing the Old Navy ACTIVE Trademark as well as Old Navy's Trident/Triangle
12   Design in Classes 25 and 35 (Serial Numbers 85/283208, 85/283201 and 85/283204,
13   respectively.)   These oppositions are currently pending under TTAB proceeding
14   numbers 91204546, 91204548 and 91204548.

15       63.   Ultimately, Old Navy's use of the Old Navy ACTIVE Trademark and the
16   related Triangle/Trident design unfairly and illegally create confusion in the
17   marketplace, misleading consumers to believe that Old Navy's goods and services are
18   associated with, sponsored by, or come from Active, and create irreparable harm to
19   Active.

20       64.   As a smaller, senior player in the marketplace, Active is not only a victim
21   of infringement by way of likelihood of confusion, but may also suffer as a victim of
22   "reverse confusion" through Old Navy's unauthorized and broad-based use of ACTIVE.

### FIRST CAUSE OF ACTION

**(Federal Trademark Infringement [Lanham Act, 15 U.S.C. § 1114(1)])**

**(Old Navy LLC and Old Navy (Apparel) LLC)**

26       65.   Active re-alleges each and every allegation set forth in Paragraphs 1
27   through 64, inclusive, and incorporates them as though fully set forth by this reference
28   herein.

66.     Active is the owner of registered trademarks, as described above. Plaintiff's has used its registered marks to identify its goods and services and to distinguish them from those made and sold by others.   Active has prominently displayed its marks on store-fronts and on products and related advertising, in addition to the press and media coverage described above.

67.     Defendants have infringed Active's marks in commerce by selling and displaying goods and services in its stores and in its on-line retail stores by using marks that are confusingly similar to the ACTIVE Trademarks, without the permission or authority of Plaintiff.

68.     Defendants' use of ACTIVE is in a manner that is likely to cause confusion as to an association, affiliation, sponsorship, or endorsement of Defendants' goods and services with or by Plaintiff.

69.     Defendants plan to continue to expand their unauthorized and infringing use on clothing items and for retail store services, and potentially other goods.

70.     Defendants' current and continued use of ACTIVE in the manner described herein is likely to cause confusion, to cause mistake, or to deceive the purchasing public.

71.     Defendants' actions are intentional and willful.  Defendants have been on notice of Active's registered trademarks by virtue of long-standing use of said marks, by notice provided by the USPTO to Defendants, and by way of actual notice in cease and desist letters sent to Defendants.  Despite actual notice of Plaintiff's registrations and prior rights, Defendants have refused to cease the infringing activity.

72.     As a proximate result of Old Navy's acts, Active has suffered, and will continue to suffer damage to its reputation and goodwill, injury to its current and potential customer base, and a loss of revenue in an amount not yet determined.

73.     Active is entitled to recover Old Navy's profits and reasonable royalties for the infringing use of the ACTIVE Trademarks, as well as damages, all of which may be trebled as a result of Old Navy's willful conduct.

74.   Old Navy's intentional and willful infringement has caused, and will continue to cause irreparable harm to Active, for which Active has no adequate remedy at law.  Therefore, Active is entitled to injunctive relief that permanently bars Old Navy from use of its Old Navy ACTIVE Trademarks.

75.   Old Navy's actions render this an exceptional case, further entitling Active to recovery of its attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### (False Designation of Origin [Lanham Act, 15 U.S.C. § 1125(a)])

### (Old Navy LLC and Old Navy (Apparel) LLC)

76.   Active re-alleges each and every allegation set forth in Paragraphs 1 through 75, inclusive, and incorporates them as though fully set forth by this reference herein.

77.   Since at least 1989, Active began developing the mark ACTIVE and has consistently used ACTIVE on goods and services in commerce for roughly two decades.  Consumers recognize and associate the ACTIVE Trademarks as originating from Active.  Indeed, Active has established significant common law trademark rights in connection with its ACTIVE family of marks.

78.   By virtue of its longstanding use of the ACTIVE Trademarks, Active has developed a valuable reputation for quality and goodwill associated with its brand.  It has invested considerable time, effort and expense with the creation, advertsing and promotion of ACTIVE in connection with its clothing, accessories, related products and retail store services.

79.   Active's use and rights in and to the ACTIVE Trademark significantly predate any use or rights to confusingly similar marks used by Old Navy.

80.   Old Navy, through its use of the Old Navy ACTIVE Trademark and related Trident/Triangle design, as described above, is engaged in trademark infringement and unfair competition in violation of Section 43(2) of the Lanham Act, 15 U.S.C. § 1125(a).

81.   Old Navy, having actual and constructive notice of Active's rights, continues to infringe by using  a confusingly similar mark in commerce in a way that is likely to cause confusion in that consumers may wrongly believe that Old Navy is associated or affiliated with, sponsorship or endorsed by Active.

82.   Old Navy's conduct, after actual and constructive notice of Active's rights, is knowing and willful.

83.   As a proximate result of Old Navy's acts, Active has suffered, and will continue to suffer damage to its reputation and goodwill, injury to its current and potential customer base, as well as a loss of revenue in an amount not yet determined.

84.   Active is entitled to recover Old Navy's profits and reasonable royalties for the infringing use of the ACTIVE Trademarks, as well as damages, all of which may be trebled as a result of Old Navy's willful infringement.

85.   Old Navy's intentional and willful infringement has caused, and will continue to cause irreparable harm to Active, for which Active has no adequate remedy at law.  Therefore, Active is entitled to injunctive relief that permanently bars Old Navy from use of its Old Navy ACTIVE Trademarks.

86.   Old Navy's actions render this an exceptional case, further entitling Active to recovery of its attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

## THIRD CAUSE OF ACTION

### (Reverse Confusion Trademark Infringement [15 U.S.C. § 1114])

### (Against Old Navy LLC and Old Navy (Apparel) LLC)

87.   Plaintiff re-alleges each and every allegation set out above in this Complaint.

88.   Defendants used and continue to use ACTIVE without the consent or authorization of Plaintiff in a manner that has caused confusion, mistake and deception and is likely to cause confusion, mistake or to deceive the purchasing public as to the source of the goods.

CALL & JENSEN
A PROFESSIONAL CORPORATION

89.     Defendants' actions are likely to lead the public to incorrectly conclude that Plaintiff's goods originate from Defendants, which will damage both Plaintiff and consumers.     Defendants' unauthorized use in commerce of the ACTIVE mark constitutes "reverse-confusion" trademark infringement under 15 U.S.C. 1114 *et seq.*

90.     As a direct and proximate result of Defendants' reverse-confusion trademark infringement, Plaintiff has suffered and will continue to suffer loss of income, profits and goodwill, and Defendants have and will continue to be unjustly enriched by acquiring income, profits and goodwill to which they are not entitled.

91.     Old Navy's intentional and willful reverse-confusion trademark infringement has caused, and will continue to cause irreparable harm to Active, for which Active has no adequate remedy at law.  Therefore, Active is entitled to injunctive relief that permanently bars Old Navy from use of its Old Navy ACTIVE Trademarks.

92.     Old Navy's actions render this an exceptional case, further entitling Active to recovery of its attorneys' fees and costs of suit as detailed in 15 U.S.C. § 1117.

## FOURTH CAUSE OF ACTION

### (California Common Law Trademark Infringement)

### (Against Old Navy LLC and Old Navy (Apparel) LLC)

93.     Active re-alleges each and every allegation set forth in Paragraphs 1 through 92, inclusive, and incorporates them as though fully set forth by this reference herein.

94.     Active has developed substantial California common law rights in and to the mark ACTIVE (and various stylizations of the ACTIVE word mark as shown above) and the Triangle Design (as also described above).

95.     By their acts, Defendants have infringed Active's trademarks by using confusingly similar marks in commerce in the state of California in a way that is likely to cause confusion as to Active's association, affiliation, sponsorship or endorsement of Defendants and their products.

96.     As a direct and proximate result of Defendants' California state common law infringement, Plaintiff has suffered and will continue to suffer loss of income, profits and goodwill, and Defendants have and will continue to be unjustly enriched by acquiring income, profits and goodwill to which they are not entitled.

97.     Unless restrained, Old Navy will continue the acts and conduct set forth in this cause of action, to Active's great and irreparable injury, for which damages will not afford adequate relief.  Active is therefore entitled to an injunction ordering Old Navy to cease and desist its infringing conduct.

98.     Old Navy committed its wrongful acts willfully after actual and constructive notice of Active's rights. Defendants' conduct therefore justifies an award of exemplary damages.

### FIFTH CAUSE OF ACTION

**(Unfair Business Practices [Cal. Bus. & Prof. Code § 17200 et seq.])**

**(Against Old Navy LLC and Old Navy (Apparel) LLC)**

99.     Active re-alleges each and every allegation set forth in Paragraphs 1 through 98, inclusive, and incorporates them as though fully set forth by this reference herein.

100.    Old Navy's producing, marketing, selling and offering for sale products bearing the ACTIVE mark constitute unlawful, unfair or fraudulent business acts or practices within the meaning of California Business and Professions Code section 17200, in that they 1) infringe Plaintiff's rights in the ACTIVE Trademarks by using confusingly similar marks on its own products in a manner that is likely to cause confusion to the general public as to the source of Old Navy's products, 2) are a form of "passing off" and 3) create reverse confusion to capitalize on Active's reputation for quality and goodwill associated with the Active Trademarks and brand.

101.    Active has suffered injury in fact and has lost money or property as a result of Defendant's unfair competition in the form of damage to its good will, lost sales, and other actual damages.

CALL & JENSEN
A PROFESSIONAL CORPORATION

102. The harm to Plaintiff Active and to members of the general public outweighs the utility of Defendants' business practices.

103. The unlawful, unfair, and fraudulent business practices of Defendants, as described in this Complaint, present a continuing threat to members of the public in that they are likely to cause confusion as to the source of Defendants' products in that the general public is likely to believe that Defendants' products originate from, or are affiliated or associated with Plaintiff, or are otherwise sponsored or endorsed by Plaintiff.

104. As a direct and proximate result of Defendants' wrongful acts as alleged in this Complaint, Defendants obtained unlawful profits to the detriment of Plaintiff.

105. Unless restrained, Defendants will continue the acts and conduct set forth in this cause of action, to Plaintiff's great and irreparable injury, for which damages will not afford adequate relief. Plaintiff is therefore entitled to an injunction prohibiting Old Navy's wrongful acts.

106. Defendants committed the wrongful acts willfully, intending to gain business and a share of the market at the expense of Plaintiff's profits and market share while creating customer confusion regarding the source of goods bearing the ACTIVE mark. Defendants' conduct justifies an award of exemplary damages.

107. Upon proof, Plaintiff is entitled to recover its costs, including attorneys' fees, under California Code of Civil Procedure Section 1021.5.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Active prays for judgment against Defendants Old Navy, LLC and Old Navy (Apparel), LLC, as to all counts of its Complaint, as follows:

### **FOR ALL CAUSES OF ACTION:**

1. Actual general and compensatory damages and royalties according to proof;

2. Reasonable attorney's fees and costs of suit;

3.  Pre-judgment interest on all amounts claimed as permitted by law;

4.  For temporary and permanent injunctive relief:

   a.  Enjoining Defendants, causing them to cease and desist from using any trademark that is similar to Plaintiff's trademarks;

   b.  Enjoining Defendants from applying to register any trademark that is similar to Plaintiff's trademarks;

   c.  Ordering Defendants to deliver up for destruction all products bearing trademarks that are similar to Plaintiff's trademarks;

   d.  Ordering Defendants to engage in corrective advertising to restore, to the fullest extent possible, the value of Plaintiff's marks;

5.  Restitution and disgorgement of Defendants' profits obtained through unjust enrichment;

6.  Punitive or exemplary damages, including but not limited to treble damages as a result of Defendants'' willful infringement; and

7.  Such other, further, and different relief as the Court may deem proper under the circumstances.

Dated:  April 13, 2012

CALL & JENSEN
A Professional Corporation
Scott P. Shaw
Deborah A. Gubernick


By: _____
        Deborah A. Gubernick

Attorneys for Active Sports Lifestyle USA, LLC
dba Active Ride Shop

ACT01-11:963911_1:4-13-12

- 20 -

**EXHIBIT A**

REGISTER | LOG IN

FEATURES    NEWSWIRE    VIDEOS    HOW TO
PROFILES    EXPOSURE    PRODUCTS

Search [GO]

CONNECT:

   
click here to watch

# 2008 SIMA IMAGE AWARDS

By Josh Hunter

Sun, May 18 2008 11:12 pm | 0 views | 0 Comments

Like    Tweet 0    0    Share                    SHARE:

And The 2008 SIMA Image Award Goes To ....

As always, the SIMA Image Awards ceremony was a night to remember, err, not to remember for some. Here are the complete results, as well as some photos if you couldn't make it this year.

**PHOTOS:**

PREVIOUS                                    VIEW:    THUMBS   ENLARGE
NEXT
(image 7 of 15)




Shane Wallace throws em up after winning Men's Retailer of the Year.

2008 SIMA IMAGE AWARDS NOMINEES & WINNERS

OVERALL AWARDS

Breakthrough Brand of the Year:
Recognizing the small- to mid-size men's or women's brand that experienced breakthrough growth between January 1 and December 31, 2007. Consider surfboard, apparel, footwear, wetsuit and accessory brands that had a breakthrough year through product development and/or increased brand recognition and appeal. Nominated companies can be new or established brands, but must have annual U.S. sales of at least $1 million and no more than $25 million.
Firewire Surfboards
***Insight*** – Winner
MADA
Matix
Sanuk

Breakthrough Retailer of the Year:
Recognizing the specialty retailer with 15 U.S. brick and mortar doors or less that experienced growth in 2007. Consider the specialty retailer that had a breakthrough year in terms of sales and increased store recognition and appeal.
BC Surf & Sport, Ft. Lauderdale



get more into
action sports
SEE THE NEW CHANNELS
WATCH NOW ►        You Tube

K-5, Oceanside
Quiet Flight, Universal City Walk Orlando
Revolution, Camarillo
**\*\*\*Surfside Sports, Costa Mesa\*\*\* – Winner**

MEN'S AWARDS

Men's Marketing Campaign of the Year:
Awarded to the men's apparel, footwear, wetsuit, hardgoods, accessory or media brand that produced the most creative
marketing campaign between January 1 and December 31, 2007. Consider men's brands that displayed a creative,
cohesive and consistent brand message in print, digital and point-of-purchase materials throughout January 1 and
December 31, 2007.
Hurley's "Essence of Surf" Campaign
**\*\*\*Insight's "ZOUP" Campaign\*\*\* – Winner**
O'Neill's "In It For Life" Campaign
Sanuk's "This Is Not a Shoe" Campaign
Vestal's "Time is What You Make of It" Campaign

Men's Apparel Brand of the Year:
Awarded to the men's apparel brand that featured the most exciting designs, increased its brand appeal, and grew its
business between January 1 and December 31, 2007.
Billabong
O'Neill
Quiksilver
**\*\*\*RVCA\*\*\* – Winner**
Volcom

Men's Boardshort of the Year:
Awarded to the boardshort product that featured the most exciting design, appeal or innovation between January 1 and
December 31, 2007.
**\*\*\*Advantage by Hurley\*\*\* – Winner**
Andy Irons Samuri Signature Series by Billabong
Foster Mod by Volcom
Hokus Pokus by Quiksilver
Lopez Freak by O'Neill

Men's Retailer of the Year:
Awarded to the specialty retailer that featured the best selection, product mix and merchandising in the men's category
between January 1 and December 31, 2007.
**\*\*\*Active Ride Shop, Southern California\*\*\* – Winner**
Hansen's Boardroom, Encinitas
Quiet Flight, Universal City Walk Orlando
Surf Ride, Solana Beach
Surfside Sports, Costa Mesa

WOMEN'S AWARDS

Women's Marketing Campaign of the Year:
Awarded to the women's apparel, swimwear, footwear, wetsuit, hardgoods, accessory and media brand that produced
the most creative marketing campaign between January 1 and December 31, 2007. Consider women's brands that
displayed a creative, cohesive and consistent brand message in print, digital and point-of-purchase materials throughout
January 1 and December 31, 2007.
**\*\*\*Billabong Juniors "Overload" Campaign\*\*\* – Winner**
Hurley Girls "Young Contemporary" Campaign
Insight Girls "ZOUP" Campaign
Roxy "The Get Outside Tour"
Volcom Girls "The Only Constant is Change" Campaign

Women's Apparel Brand of the Year
Criteria: Awarded to the women's apparel brand that featured the most exciting designs, increased its brand appeal, and
grew its business between January 1 and December 31, 2007.
**\*\*\*Billabong Girls\*\*\* – Winner**
Lucy Love
Matix
Roxy
Volcom Girls

Women's Swim Brand of the Year
Awarded to the women's swim brand that featured the most exciting designs, increased its brand appeal, and grew its
business between January 1 and December 31, 2007.
Billabong Girls
Hurley
**\*\*\*L-Space\*\*\* – Winner**
Roxy

Volcom

Women's Retailer of the Year:
Awarded to the specialty retailer that featured the best selection, product mix and merchandising in the women's
category between January 1 and December 31, 2007.
Hansen's Boardroom, Encinitas
Hotline, Virginia Beach
Huntington Surf & Sport, Bella Terra Center
Revolution, Camarillo/Newbury Park
***Sun Diego, San Diego County*** – Winner

PRODUCT AWARDS

Accessory Product of the Year
Criteria: Awarded to the accessory product at retail between January 1 and December 31, 2007 that featured the most
exciting design, appeal or innovation. Accessory products such as watches, eyewear, bags, fins, etc. can be considered.
***51-30 Watch by Nixon*** – Winner
7'6" Triple Wheelie Board Bag by FCS
Dave Rastavich/Sea Shepherd Vector Keel Fin by Future Fins
Mutant Boot Series by O'Neill
Shane Dorian Kona Gold Signature Face Stick by Vertra

Environmental Product of the Year:
Awarded to the most exciting, appealing and/or innovative environmental surf product at retail between January 1 and
December 31, 2007. Consider apparel, footwear, accessory, wetsuit, surfboard or any other surf-related product that was
created to lessen the impact on the environment, whether through its manufacturing process, materials or usage of the
product itself.
Clean Your Beach Tees by Roxy
ECO Fullsuit by Body Glove
Machado Classic Sandal by Reef
***Sonic Recycler Boardshort by Billabong*** – Winner
Waterscript Creedlers Sandals by Volcom

Footwear Product of the Year:
Awarded to the footwear product at retail between January 1 and December 31, 2007 that featured the most exciting
design, appeal or innovation.
B4BC Stash Sandal by Reef
Duke Aloha Shoe by Vans
Hiapo Sandal by OluKai
Landmark Series by DVS
***Sidewalk Surfers by Sanuk*** – Winner

Surfboard Model of the Year:
Awarded to the surfboard model at retail between January 1 and December 31, 2007 that featured the most exciting
design, appeal or innovation.
***Channel Islands Biscuit*** – Winner
Firewire Direct Drive
...lost Speed Demon Series
Rusty EPS Range
Surftech Tuflite Laird 12'1"

Wetsuit of the Year:
Awarded to the wetsuit at retail between January 1 and December 31, 2007 that featured the most exciting design,
appeal or innovation.
3/2 Vapor Fullsuit by Body Glove
E-Bomb Pro w/E3 by Rip Curl
***Infiniti Drylock by Xcel*** – Winner
Psycho II by O'Neill
Revolution Hybrid Fullsuit by Billabong

CATEGORIZED: Features, Photos

| Like | Tweet | 0 | 0 | Share | SHARE: |

# RELATED ARTICLES

No related posts.

# 0 COMMENTS